[Civ. No. 109.   Second Appellate District.—December 20, 1905.]

## CELIA E. KESSLER, Respondent, v. WILLIAM J. KESS-LER and ANITA MINOR, Appellants.

DIVORCE — FINDINGS—UNSUPPORTED CONCLUSION AND JUDGMENT FOR MAINTENANCE.—In an action by a wife for divorce for extreme cruelty, findings that there was no extreme cruelty; that her condition was not so intolerable that she was forced to leave her husband; that before separation they were nervous and irritable, caused by ill-health; that during a controversy over a payment by him to his daughter, out of his separate property, defendant said plaintiff would get only what she helped to earn; that shortly afterward they were reconciled, and each forgave unkindness toward the other—do not warrant the conclusion that she was justified in leaving him, nor support a decree in her favor for maintenance.

ID.—ABANDONMENT OF HUSBAND BY WIFE—DUTY OF WIFE—OBLIGATION OF HUSBAND.—Where the wife has abandoned the husband without justification, it is her duty to return and conform to his reasonable place and mode of living as the head of the family. It is not the duty of the husband so abandoned by the wife to solicit her return, and until her offer to return, no obligation of support rests upon him.

ID.—PROTECTION OF RIGHT OF MAINTENANCE—FRAUDULENT TRANSFERS—ABSENCE OF RIGHT—WIFE NOT INTERESTED IN TRANSFER OF HUSBAND'S ESTATE.—While an existing right of maintenance of the wife is so far within the protection of section 3459 of the Civil Code that it avoids transfers made with intent to defeat it, yet where no such right exists, and there is no violation of the husband's obligation of support, the wife is not interested in her husband's estate, and she cannot avoid a transfer thereof to his daughter.

ID.—CONVEYANCE OF SEPARATE PROPERTY NOT AFFECTING WIFE'S RIGHT OF SUPPORT.—It cannot be truthfully said that the husband, who is able to earn wages and carry on business, has put it out of his power to perform the obligation to support his wife, by making a conveyance of his separate property to his daughter.

ID.—JUDGMENTS FOR ALIMONY PENDENTE LITE—TRANSFER BEFORE SUIT. Mere judgments for alimony *pendente lite,* each of which is a final judgment and appealable, there being no possibility of a final judgment for alimony or maintenance under the facts, cannot of themselves be ground for setting aside a transfer of the husband's separate property before suit when the wife was in no respect a creditor of the husband.

ID.—RECITAL IN FINAL JUDGMENT FOR MAINTENANCE—ORDER FOR PAYMENT FROM PROCEEDS OF SALE.—The recitals of the judgments for

alimony in the erroneous final judgment for maintenance adds noth-
ing to their vitality or force: and orders embodied in that judgment
directing payment thereof of the proceeds of the property sold to
enforce the maintenance, though they would be valid if that judg-
ment were valid and could be enforced by sale, yet fall with it.

APPEAL from a judgment of the Superior Court of Los
Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Edwin A. Meserve, and Luther G. Brown, for Appellants.

J. L. Murphey, for Respondent.

ALLEN, J.—Upon a reconsideration of this case on a re-
hearing we are of opinion that the judgment and order of the
trial court should be reversed to the extent and on the grounds
stated in the opinion originally filed, which are as follows:

Action for divorce, alimony, and to declare a trust. Judg-
ment for defendant Kessler denying a divorce, and for plain-
tiff for $50 per month maintenance during her natural life,
with decree that defendant Minor holds property described in
complaint in trust for defendant Kessler, from which judg-
ment of maintenance and decree declaring trust all the de-
fendants appeal.

The court finds that plaintiff and defendant Kessler were
married in 1901, and are husband and wife; that at the date of
the marriage defendant was the owner of certain real prop-
erty of the value of $15,000, subject to an encumbrance of
$3,000; that, in addition, he was possessed of money to the
amount of $1,300, and some other personal property of small
value; that he had two daughters by a former marriage, one
of whom is defendant, Anita Minor, the other a daughter of
seventeen years; that shortly after the marriage the husband,
preparatory to a trip to Mexico, placed the $1,300 in bank
in the name of his daughter Anita, who, the court found, held
the same in trust for the father. This the wife objected to,
and quarrels were precipitated on account thereof; that after-
ward, on or about September 12, 1902, plaintiff left defend-
ant's home and has never since lived with him as his wife;
that afterward, on October 8, 1902, Kessler made a convey-

ance of all his separate estate, being the premises described
in this action, to his daughter Anita Minor; that at said date
he was of the age of forty-six years, and had ability to earn
wages and carry on business; that after the plaintiff left her
home the husband invited her to return, but such invitation
was not in good faith and was not accepted. She never of-
fered at any time to return to him. In June, 1903, she com-
menced this action, and in her complaint specifies acts of the
grossest cruelty on the part of her husband, on account of
which she justified her living apart from him. The court,
upon the final hearing, found none of the material allegations
to be true, but, on the contrary, "that it is not true that the
actions of the defendant Kessler were sufficient to constitute
extreme cruelty toward plaintiff," and, further, that the fol-
lowing part of paragraph 7 was untrue: "That her condition
became so intolerable by reason of his actions that she was
forced to leave him." The only facts of any materiality
found by the court in plaintiff's favor were that before the
separation both parties were nervous and irritable, caused by
ill-health, and that upon one occasion, during a controversy
over the payment to the daughter of a sum of money, defend-
ant Kessler said to plaintiff that she would only get what
she helped to earn, and nothing more. But the court further
finds that at this time, or shortly after this quarrel, a recon-
ciliation took place, and each mutually forgave their unkind-
ness toward each other. From these facts the trial court, as
a conclusion of law, determined that the wife was justified
in leaving her husband, and, while it denied the divorce,
rendered a judgment in the plaintiff's favor for $50 per
month as for her separate maintenance, and in such judgment
found that certain other judgments, aggregating $1,250, for
alimony *pendente lite,* were unpaid, all of which sums were
made a charge upon the premises conveyed to Mrs. Anita
Minor, and the deed to her was declared to be in fraud of
plaintiff's rights, and as to plaintiff, Mrs. Minor held only
the legal title in trust for her father, and directed a sale of
the premises upon default of payment.

The first contention of appellants is that the conclusion of
law and judgment that plaintiff was justified in leaving her
husband have no support in the findings. With this we quite
agree. The fact that the husband would deposit in his daugh-

ter's name an amount of money then constituting but a small share of his estate, and that both husband and wife were sick and nervous, and that in a quarrel he had said to her that what she would get out of his property she would have to earn, were in themselves no justification for the wife's abandonment, were we even to disregard the subsequent forgiveness and reconciliation. The judgment for separate maintenance was unwarranted. By section 156 of the Civil Code, the husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto. Section 175 of the Civil Code provides: "A husband abandoned by his wife is not liable for her support until she offers to return, unless she was justified by his misconduct in abandoning him." There is nothing in the record to indicate that the place or mode of living provided by the husband was not all that could be desired, and it does appear that she abandoned him and his home without justification. The wife having so abandoned her husband, he was not required to solicit her return, and that he did so, either in good or bad faith, is not material. Under our Civil Code it was the duty of the erring one to offer to return, and until she did so no obligation of support rested upon the husband, and no violation of duty arose warranting a judgment against him.

Appellant Minor next contends that, there being no violation of the obligation of support, plaintiff was not a creditor and not interested in the husband's separate estate, and thereupon the decree against her and her property was without authority. With this we also agree. Section 155 of the Civil Code provides: "Husband and wife contract toward each other obligations of mutual respect, fidelity and support." This support, contracted by the husband, is a duty to be performed subject to the provisions of sections 156 and 175, heretofore cited. Until that obligation is violated no cause of action arises in favor of either. While it is true, as stated in *Murray* v. *Murray*, 115 Cal. 273, [56 Am. St. Rep. 97, 47 Pac. 37], that the right of maintenance is so far within the protection of section 3439 of the Civil Code, that it avoids transfers made with intent to defeat that right, yet it must follow as a natural consequence that, in order to maintain an action in equity to enforce such right, the plaintiff should show, and the court should find, that her conduct had been

such as to entitle her to the right of separate maintenance. Respondent, however, claims that by the conveyance of his property the husband placed it without his power to perform the obligation of maintenance. This cannot be truthfully said of one able to earn wages and carry on business. To hold otherwise would be to say that every man without property violates his marriage obligation as soon as it is taken, and the wife may leave him upon the theory that he has no ability to perform his obligation of support. The every-day observation of life teaches us that the indulgent husband and father, who is diligent in caring for his wife and family is more frequently found among those whose only revenue is derived from their hands or brains, than among those possessed of means, curtailing every expense that they may add more to a present sufficiency. In this state, under section 157 of our Civil Code, "neither spouse has any interest in the property of the other." Hence it follows that, if the obligation of support was not affected by this transfer to the daughter, the plaintiff had no interest which could be affected. We do not regard with favor the contention of respondent that the fact that Kessler owned property which he represented to be worth $15,000, and upon the faith of which plaintiff married him, affords ground of relief. Purely mercenary marriages may be, and undoubtedly are, frequently contracted; but, when these unnatural alliances are sought, the law wisely provides for a marriage settlement, or antenuptial contract, out of which rights may be established, and in the absence of such agreement the general property laws of the state control. Where the right of support has not been affected by the transfer of property in which she has no other interest, no cause of action lies in the wife to disturb conveyances thereof. (*Greer* v. *Greer*, 135 Cal. 121, [67 Pac. 20].) Nor can any rule suggested in *Volkmar* v. *Volkmar*, 147 Cal. 175, [81 Pac. 413], have application in this action.

Nor, in our opinion, did the judgments for alimony *pendente lite* entitle the plaintiff to a decree as against defendant Minor. These orders were final judgments and appealable. (*Sharon* v. *Sharon*, 67 Cal. 198, [7 Pac. 456, 635, 8 Pac. 709].) When granted, they have nothing to do with the final judgment in the case, and will not be affected by it. (*Baker* v. *Baker*, 136 Cal. 304, [68 Pac. 971].) The mere recital in the

2 Cal. App.—33

final judgment and decree in this case of the existence of such former judgments did not give to them any additional vitality or force. Had the findings and judgment been correctly rendered in favor of the plaintiff, these previous judgments rendered in the same action might very properly have been included in the order directing the application of the proceeds of the sale made in the event of default of the payment of the final judgment for maintenance; but, there being no final judgment for alimony or maintenance possible under the facts, as a consequence no decree or order affecting the real property of the defendant Minor could be made. These previous judgments and any orders in relation thereto were but incidents of a final judgment, and the orders in relation thereto must fall when the main judgment fails.

We are further of the opinion that it could not be said in any event, under the facts of this case, that the conveyance was made to defeat these judgments *pendente lite*. For, as before shown, the wife was not a creditor, and had no cause of action against her husband, either at the date of the filing of the complaint or the final decree, and how can one be said to have made a conveyance to defeat a claim not in existence, or to defeat the collection of a judgment given as expense money in an unsuccessful attempt to establish such claim? In our opinion, plaintiff had no claim or interest in the real estate standing in the name of Mrs. Minor at the date of the final decree, and had no right to question the conveyance to her, and the decree and judgment of the court in that behalf have no support in the findings.

Judgment reversed, with directions to enter a judgment upon the findings in favor of defendant Minor; also, judgment in favor of defendant Kessler in conformity with this decision.

Gray, P. J., concurred.

SMITH, J.—I concur in the judgment, and, generally, in what is said in the opinion as to the judgment of the lower court for maintenance. I concur, also, in the conclusion of the majority of the court as to attorney's fees and alimony *pendente lite* on the grounds stated in the opinion.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 15, 1906.