[L. A. No. 2763. Department One.—January 9, 1912.]

## JENNIE M. CLOPTON, Respondent, v. HOGGATT CLOPTON, PEARL CLOPTON, and HUGH CLOPTON, Appellants.

HUSBAND AND WIFE—ACTION FOR MAINTENANCE—FINDINGS—EVIDENCE—EXTREME CRUELTY.—It is held in an action by a wife for maintenance that it cannot be said that the findings of the trial court, to the effect that the acts of extreme cruelty on the part of the husband were without sufficient provocation, are unsupported by the evidence.

ID.—APPEAL—REVIEW OF FINDINGS—CONFLICT OF EVIDENCE.—The decision of the trial court, upon questions of fact, is conclusive upon the appellate court, in so far as there is any substantial evidence tending fairly, with such inferences as may reasonably be drawn therefrom, to support such decision, even though the latter court may think that a different conclusion should have been reached.

ID.—FINDING OF EXTREME CRUELTY—CONCLUSIVENESS ON APPEAL.—The question whether acts or conduct constitute such cruelty as under all the circumstances shown warrants the granting of a divorce is

of such a nature that the conclusion of the trial court is necessarily entitled to great weight, and it is only where it is clear that it is without any substantial support in the evidence that it will be disturbed on appeal.

ID.—DISMISSAL OF PRIOR ACTION FOR DIVORCE—SUBSEQUENT ACTION NOT BARRED.—An action by a wife for a divorce, which is dismissed by her, under subdivision 1 of section 581 of the Code of Civil Procedure, without the consent or knowledge of the defendant, and without consideration of any kind from him to her, is not a bar to a subsequent action concerning the matters involved therein.

ID.—RESERVING RULING ON EVIDENCE—PROPER PRACTICE.—The practice of receiving evidence that is objected to, subject to the objection and without a ruling thereon, is not, except under very exceptional circumstances, to be commended, and where such course is followed, a ruling should be made prior to the conclusion of the trial and in time to enable the party to fully present his case in the light of such ruling.

ID.—FAILURE TO RULE ON OBJECTIONS—LACK OF PREJUDICE.—The failure of the court to formally rule on evidence so received subject to objections is without prejudice, if the objections were untenable, and the court finds in consonance with the evidence.

ID.—ANTENUPTIAL CONTRACT—IMMATERIAL FINDING AS TO FRAUD IN PROCUREMENT.—In such action by the wife for maintenance, in which alleged *mala fide* grantees of the separate property of the husband are joined as defendants, a finding that an antenuptial contract executed by the husband and wife was fraudulently obtained by the husband is immaterial, where there was nothing in such contract purporting to relieve the husband from his obligation of supporting his wife during the continuance of the marriage relation, and the fact that such finding is unsupported by the evidence is without prejudice to the defendants.

ID.—FRAUDULENT TRANSFER OF PROPERTY BY HUSBAND—RIGHT OF WIFE TO ATTACK.—While the wife, merely because of the conjugal relation, has no standing to attack a voluntary disposition of her husband's separate property, for the reason that the fact of marriage gives her no interest therein, nevertheless, where by reason of the conduct of the husband she is entitled to enforce separate maintenance at his hands, she is so far within the protection of the statute invalidating any transfer of property made with intent to delay or defraud "any creditor or other person of his demands," that such statute avoids as to her any transfer made with design to defeat such right.

ID.—LIMITATION ON RIGHT OF WIFE TO ATTACK TRANSFER.—It is only, however, to the extent that the wife's right of support has been affected by the transfer of his separate property by her husband that she has any legal ground of complaint entitling her to avoid such transfer, and the court should not disturb such a transfer any

further than the exigencies of the decree in favor of the wife require, all else belonging to the transferee.

ID.—DECREE FOR MAINTENANCE—PROPERTY OF HUSBAND TO BE FIRST RESORTED TO.—In an action by a wife for maintenance, the separate property of the husband, conveyed by him without consideration in order to hinder and defraud the plaintiff and to deprive her of her right to support, cannot be resorted to for payments of the amounts accruing under the decree in the wife's favor, as long as the husband has other property of his own available for that purpose.

ID.—VALUE OF HUSBAND'S PROPERTY—UNSUPPORTED FINDINGS.—Findings as to the value of the untransferred property of the husband, showing it to be insufficient to provide for the payment of the maintenance awarded by the decree to the wife, are held unsupported by the evidence.

APPEAL from an order of the Superior Court of Orange County refusing a new trial. Z. B. West, Judge.

The facts are stated in the opinion of the court.

Kendrick & Ardis, for Appellants.

John E. Daly, and Hugh T. Gordon, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendants from an order denying their motion for a new trial in an action brought by plaintiff to obtain a decree requiring defendant Hoggatt Clopton, her husband, to pay her monthly, for her support and maintenance, the sum of two hundred and fifty dollars per month, together with attorney fees and costs for the prosecution of the action.

Plaintiff alleged in her complaint that she was without means and physically unable to earn money for her support. Defendants Pearl Clopton and Hugh Clopton, the children of Hoggatt Clopton, were made parties defendant, it being alleged substantially as to them that Hoggatt Clopton, in anticipation of her action and for the purpose and design to hinder, delay, and defraud the plaintiff and to deprive her of her right to support and maintenance, had conveyed to them, without consideration, all of his real property, specifically described in the complaint and alleged to be worth not less than one hundred thousand dollars. She asked as to them that any allowance made her be adjudged a lien against such real property so conveyed. Her complaint against her husband

upon which her prayer for permanent support and main-
tenance was based, was that he had been guilty of extreme
cruelty constituting cause for divorce.  Defendant Hoggatt
Clopton by his answer denied the allegations of cruelty, de-
nied that he had conveyed all of his property to his co-defend-
ants, and denied that such as had been conveyed had been so
disposed of with intent to defraud plaintiff or deprive her of
support or maintenance.  He also, by cross-complaint, asked
for a divorce on the ground of extreme cruelty inflicted on
him by plaintiff.  Defendants Hugh Clopton and Pearl Clop-
ton each answered, denying the allegations of the complaint
that the several conveyances to them were without considera-
tion or were made with the intent or purpose set forth therein,
and alleging that Hoggatt Clopton is the owner of a house and
lot in the city of Los Angeles and other property reasonably
worth the sum of eleven thousand dollars, and that the income
from said property is sufficient to support plaintiff.

The trial court found in favor of plaintiff upon the issues of
extreme cruelty and necessity for support and maintenance by
her husband.  It further found that defendant had conveyed
to Pearl Clopton and Hugh Clopton all of his real property
except a lot in the city of Los Angeles, without consideration
and with the intent and purpose alleged in the complaint, the
same being parcels of land at Long Beach in Los Angeles
County and at Huntington Beach, Newport Beach, and Santa
Ana in Orange County.  It found that the value of all of said
property, including that in the city of Los Angeles, was
twenty-two thousand dollars.  It further found that the only
property left Hoggatt Clopton was the lot in the city of Los
Angeles, of the value of twenty-five hundred dollars and sub-
ject to a mortgage for eleven hundred dollars, and producing
an income of about twelve dollars a month, and certain oil
stock and stock in the Huntington Beach Tent City Company,
neither of which had any market value, and that said property
"is insufficient to answer for a judgment to be made in this
cause," that the income from said land is not "sufficient for the
support of plaintiff."

Judgment was given that Hoggatt Clopton pay plaintiff
seventy-five dollars per month for her maintenance, and two
hundred and fifty dollars counsel fees, that said charges con-
stitute a valid lien upon all the property at Huntington

Beach and Long Beach so conveyed to Hugh Clopton and
Pearl Clopton, and that neither of said last-named defendants
has any interest in any of the property conveyed to him and her
respectively, "except subject to the lien of this judgment in
plaintiff's favor."

Defendants' motion for a new trial was ordered granted
unless plaintiff file a release and discharge of her judgment
as to all the property described in the findings and judgment
except that situate at Huntington Beach in Orange County.
This requirement having been complied with by plaintiff, the
motion for a new trial was denied.

1. It cannot be held that the findings of the trial court upon
the issues of extreme cruelty on the part of defendant Hoggatt
Clopton and that his acts in this regard were without suffi-
cient cause or provocation (for this is what the finding in this
behalf means) are without sufficient support in the evidence.
We do not mean to say that were we acting as trial judges in
this case, our conclusion would have been the same upon this
question as was that of the trial judge. We simply mean what
has so often been said by this court, that the decision of the
trial court upon questions of fact is conclusive upon us, in so
far as there is any substantial evidence tending fairly, with
such inferences as may reasonably be drawn therefrom, to
support such decision, even though we may think that a differ-
ent conclusion should have been reached. As was said in
*Robinson v. Robinson,* 159 Cal. 203, [113 Pac. 155], "it should
further be borne in mind that the question whether acts or
conduct constitute such cruelty as under all the circumstances
shown warrants the granting of a divorce is of such a nature
that the conclusion of the trial court is necessarily entitled to
great weight, and it is only where it is clear that it is without
any substantial support in the evidence that it will be dis-
turbed on appeal." No useful purpose would be subserved by
a discussion of the evidence given on this issue.

We find no prejudicial error in any action of the trial court,
complained of in the brief, in the matter of evidence on this
issue.

The objection that a question asked defendant Hoggatt
Clopton was suggestive and leading was not good and should
not have been sustained, but he subsequently gave the desired
evidence. The writing signed by him relative to a proposed

compromise of a prior divorce action was not of such a character as to prejudice his cause, even if improperly admitted in evidence. The same must be held as to an answer of plaintiff giving a remark that she heard defendant Pearl Clopton make to defendant Hugh on one occasion.

Complaint is made that the court failed to rule on defendants' objection to testimony given by plaintiff as to certain alleged acts of cruelty occurring prior to April 19, 1907, on which day a previous action brought by plaintiff for a divorce on the ground of cruelty was dismissed by her. The court reserved its ruling, receiving the evidence subject to the objection. Apparently it has never formally ruled on this objection, except in so far as a ruling against the objection is to be inferred from the fact that the court has found upon the facts so testified to in favor of plaintiff. The matter must here be regarded as though defendants' objections had been formally overruled and exceptions noted to such rulings. We see no reason to doubt the admissibility of the evidence. The evidence shows very clearly that the dismissal of the former action was by the plaintiff herself, under subdivision 1 of section 581 of the Code of Civil Procedure, without the consent or even knowledge of the defendant, Hoggatt Clopton, and without consideration of any kind from him to her. All this is shown by his own evidence. It consequently was not a bar to another action concerning the matters involved therein. *Merritt* v. *Campbell,* 47 Cal. 542, involving a judgment of dismissal based upon and entered in pursuance of an agreement of the parties, is not in point.

To show cruelty on the part of plaintiff, defendants offered in evidence the complaint of plaintiff in such former action, plaintiff objected thereto, and the court reserved its ruling thereon, receiving it subject to the objection. Defendant Hoggatt Clopton had alleged the filing of this complaint and its contents in his cross-complaint in this action, and the trial court found in favor of said defendant upon such allegations. It is thus apparent that the trial court did in fact receive and consider such evidence so offered by defendants. It further found, however, that the allegations of plaintiff contained in said divorce complaint were true.

In passing, it is proper to say, as has been said before, that the practice of receiving evidence that is objected to, subject

to the objection and without a ruling thereon, is not, except under very exceptional circumstances, to be commended. And where such a course is followed, certainly a ruling should be made prior to the conclusion of the trial and in time to enable the party to fully present his case in the light of such ruling. However, as we have said, we cannot see that any prejudice could have resulted to defendants in this case by reason of the failure of the court to formally rule on the objections specified above.

Complaint is made of a finding of the trial court to the effect that an antenuptial contract executed by plaintiff and Hoggatt Clopton on the day of their marriage, providing, among other things, that in the event that there was no issue of said marriage, the wife should have one fourth of such property as he owned at the time of his death, and that he should have the absolute and exclusive management and control, with power of disposition, of all his property during his lifetime, was fraudulently obtained by said Hoggatt, is not sufficiently sustained by the evidence. This claim is well based, there being absolutely nothing in the evidence from which any such conclusion could reasonably be inferred. But we regard this finding as altogether immaterial, and are unable to see that it prejudices defendants in any way. There is nothing in this contract that purports to relieve the husband from the obligation of supporting and maintaining his wife during the continuance of the proposed marriage relation, and, of course, nothing of that kind was intended by either party. That duty on the part of the husband was in no way affected by the contract. It is settled in this state that, while the wife, merely because of the conjugal relation, has no standing to attack a voluntary disposition of her husband's separate property, for the reason that the fact of marriage gives her no interest therein, nevertheless, where by reason of the conduct of the husband she is entitled to enforce separate maintenance at his hands, she is so far within the protection of the statute invalidating any transfer of property made with intent to delay or defraud "any creditor or other person of his demands" (Civ. Code, sec. 3439), that such statute avoids as to her any transfer made with design to defeat such right. (*Murray* v. *Murray,* 115 Cal. 266, [56 Am. St. Rep. 97, 37 L. R. A. 626, 47 Pac. 37].) The extent of this rule has been recognized in

all subsequent decisions. (See *Tully* v. *Tully,* 137 Cal. 65, [69 Pac. 700]; *Greer* v. *Greer,* 135 Cal. 124, [67 Pac. 20]; *Kessler* v. *Kessler,* 2 Cal. App. 509, 83 Pac. 257].) We are speaking, of course, of transfers made without consideration. Giving the antenuptial contract full force, it did not in any degree affect this right of the wife. The question whether it was fraudulent or not could not affect the determination of the question whether the conveyances were made with design to affect the right of the wife to the maintenance and support to which she was entitled, which was the vital question in this connection, and we cannot see that the finding complained of could possibly have affected the determination by the trial court of the latter question. Nor do we see that it could possibly have affected the determination of the trial court as to the amount that should reasonably be allowed to the wife for her support and maintenance. Conceding, as claimed, that the financial resources of the husband constituted an element to be considered in fixing that amount, the vital question in this regard would be the amount of such resources, disregarding such conveyances as had in fact been made with such design to defraud the wife, and the question of the validity of the antenuptial contract could not affect the determination of that question. The finding complained of was pure surplusage, not affecting the determination of any material issue.

There was, we think, enough in the evidence to support the conclusion that the sum of seventy-five dollars per month was a reasonable amount to be paid for the support and maintenance of the wife.

The same is true as to the conclusion that all the conveyances by Hoggatt Clopton to Hugh Clopton and Pearl Clopton, respectively, made after the commencement of this action, which include all the conveyances except the one made to Pearl of a lot of land in the city of Long Beach, which was released in pursuance of the order of the court from the effect of the judgment, were made by plaintiff without any consideration from either of the grantees.

There remains for consideration another claim made by defendants Hugh and Pearl Clopton, which we are satisfied must be held to be good and which requires a reversal of the order as to them. It is only to the extent that the wife's right of support has been affected by the transfer of his separate

property by her husband that she has any legal ground of complaint entitling her to avoid such transfer. (See *Kessler* v. *Kessler,* 2 Cal. App. 509, [83 Pac. 257].) The court should not disturb such a transfer any further than the exigencies of the decree in favor of the wife require, all else belonging to the transferee. (*Murray* v. *Murray,* 115 Cal. 266, [56 Am. St. Rep. 97, 37 L. R. A. 626, 47 Pac. 37] ; *Tully* v. *Tully,* 137 Cal. 509, [83 Pac. 257].) It was found by the trial court, in accord with the evidence, that defendant Hoggatt Clopton still owned, in addition to certain oil stock, and stock in the Huntington Beach Tent City Company, a lot of land in the city of Los Angeles, encumbered by mortgage in the sum of eleven hundred dollars. The court also found that the stocks had no market value, and that the value of the Los Angeles lot was only twenty-five hundred dollars, encumbered by mortgage in the sum of eleven hundred dollars. It further found that it is not true that the property remaining in defendant Hoggatt Clopton was reasonably worth eleven thousand dollars, or any greater sum than twenty-five hundred dollars. This finding is attacked as not being sustained by the evidence, and we are unable to find any sufficient support therefor. The sum and substance of the testimony in regard to the stocks, which had cost Mr. Clopton several thousand dollars, was that there had been no income therefrom for two or three years. The mere absence of present income did not show entire want of value. But passing all question as to the value of the stocks, there was also the Los Angeles realty. The monthly income from the house thereon was only twelve dollars, but this does not establish that the value of the property was only twenty-five hundred dollars. The deed of this property to Hoggatt Clopton, introduced in evidence by plaintiff, recited a consideration of ten thousand dollars. The uncontradicted evidence of Hoggatt Clopton was that it is worth "six or seven thousand dollars." Plaintiff's attorneys have not pointed out and we have not been able to find any other evidence on this point. In view of what we have said, the finding above referred to was material on the question whether plaintiff should be given any relief as against the transferred property, and if it is not sustained by the evidence, as we hold to be the case, the defendant grantees are entitled to a new trial. We are of the opinion, also, that this is a matter material in the determina-

tion of the question whether the transfers to Hugh Clopton and Pearl Clopton were made with the design and purpose to deprive the wife of such support as she was entitled to. It is, however, unnecessary that there should be any new trial of the issues relating to the question of the defendant Hoggatt's liability to the plaintiff for her separate support and maintenance.

It should further be said that we do not see how any of the transferred property can properly be resorted to for the payments of amounts accruing under the decree in plaintiff's favor, as long as the defendant husband has property of his own available for that purpose.

The order denying a new trial is affirmed as to defendant Hoggatt Clopton, and reversed as to defendants Hugh Clopton and Pearl Clopton, who are awarded a new trial upon all the issues made by the pleadings except those relating to the right of plaintiff to separate support and maintenance by defendant Hoggatt Clopton.

Shaw, J., and Sloss, J., concurred.