720

[Civ. No. 3945.   Fourth Dist.   Sept. 22, 1949.]

ELISA PADILLA PERRY, Appellant, v. FREDERICK E. PERRY, Respondent.

Hunter M. Muir for Appellant.

Clarence B. Smith, C. W. Dickenson and H. L. Welch for Respondent.

GRIFFIN, Acting P. J.—Plaintiff instituted a separate maintenance action on the ground of extreme cruelty against defendant in San Diego County. She sought $2,000 per month as support money, and claimed community interest in considerable described property. On application of the defendant husband the action was transferred to Imperial County because it was claimed he was a resident of that county at the time. Defendant there appeared, on January 12, 1948, and by answer and cross-complaint, alleged desertion and extreme cruelty on the part of plaintiff, and also sought an annulment of the marriage. He admitted that plaintiff had been a resident of San Diego County for more than one year but alleged that he had been a resident of Imperial County for more than one year prior to the filing of the cross-complaint. This allegation is not denied by the plaintiff and the trial court so found. Defendant then alleged that plaintiff and defendant were married in July, 1942, and separated on January 3, 1947; that the only community property consisted of an automobile and house furnishings located in San Diego. He denied that the remaining property was community property. During the course of the trial defendant sought permission of the court to file an amended cross-complaint setting forth all of the provisions of the original cross-complaint due to the fact that the original cross-complaint was not personally verified by the defendant. Accordingly, on March 23, 1948, the amended cross-complaint was, by order of court, thus filed and the trial continued. The trial court specifically found that plaintiff had been a resident of San Diego County for more than one year; that defendant and cross-complainant was a bona fide resident of Imperial County for the time alleged; that defendant was not guilty of extreme cruelty and denied plaintiff relief on her separate maintenance complaint. It then found that plaintiff, without cause or reason, deserted defendant for more than one year and granted the defendant a divorce on that ground only. It found that all of the prop-

erty owned by defendant was his separate property which was acquired by him before his marriage to plaintiff, excepting the furnishings in the house in San Diego which were found to have been owned by plaintiff and that defendant's contribution toward the payment therefor was a gift to her, and accordingly awarded such furnishings to her. The court also found that the automobile purchased by her (on which payments were subsequently made by defendant) was her property. It then found that all of the earnings of defendant during their married life were expended in support of plaintiff and defendant.

Plaintiff appeals from the interlocutory decree of divorce, the order denying a motion to amend the finding, and the order denying her motion to allow additional attorney's fees and costs on appeal.

The first complaint on appeal is that the trial court's finding that defendant and cross-complainant had been a resident of Imperial County for one year prior to the filing of the cross-complaint is not supported by the evidence and that there was no sufficient corroboration of such fact, citing *Bullard* v. *Bullard,* 189 Cal. 502 [209 P. 361]; *Coulthurst* v. *Coulthurst,* 58 Cal. 239; *Bragg* v. *Bragg,* 32 Cal.App.2d 611, 612 [90 P.2d 329]; *Flynn* v. *Flynn,* 171 Cal. 746 [154 P. 837], in which cases it was held that it was not only necessary to plead the necessary residence required by statute in a cross-complaint for divorce, but such allegation must be established by proper evidence and corroborated, as required by section 130 of the Civil Code, and the question whether the required residence essential to jurisdiction exists was a factual question for the trial court, but such finding may not rest solely on the uncorroborated testimony of the parties and the burden of proof of such allegation rested on the party claiming such residence.

Defendant lived in Winterhaven, Imperial County, over 15 years prior to his marriage to plaintiff. Plaintiff then owned a home in San Diego, mortgaged in the sum of $2,000, and an automobile on which there was money due. After the marriage defendant paid off the mortgage and cleared the car payments for her. Plaintiff's two children and her mother lived with her in San Diego. Prior to defendant's marriage he owned acreage in Winterhaven, a liquor store, gas stations and other property on which was located a house. He rented four rooms to his employee's family and continually retained one room for his own use and occupancy after the marriage. He also spent much of his time in San Diego, staying at the

home of plaintiff and with her family. Defendant testified that before they were married he "figured we could live at both places, just like we planned"; that plaintiff went to the valley on week ends to be with him when he was staying over there but that she never came over there again after the separation and that he never stayed at her house in San Diego after that time.

Plaintiff testified that defendant resided in San Diego with her up to the time of the separation and that he had relinquished his residence in the valley. There is no direct statement by the defendant, due to the oversight of counsel in propounding the questions, that defendant maintained his residence in the Imperial Valley during the time of his marriage to plaintiff or for the period prescribed. It is, however, alleged that he was a resident of that county for the required time and the court so found, and there is some evidence indicating that there is support for the court's finding in this respect. For some time before the separation defendant was remodeling the house in Winterhaven for occupancy by plaintiff and defendant. Plaintiff testified that as to her week-end trips "All my trips was to live with him in Winterhaven and fix that house"; that every week or two defendant "got mad at her" and "he pack and go to Winterhaven during the last two years" she lived with him; that she lived "here in Winterhaven with him and there, too (San Diego), two houses"; that she started to live with him over at Winterhaven three years after she married him because he was going to remodel the house.

Plaintiff's brother testified that when the parties were first married they lived in San Diego for about three years, and for the last two years they "have been on and off at Winterhaven, going back and forth" but their "residence is in San Diego . . . they have been there most of the time"; that he was their guest in Winterhaven when Mr. Perry bought his wife a new electric stove.

Defendant testified that he finished remodeling the house about one and a half years prior to March 22, 1948, and that plaintiff ordered drapes and bought "stuff" for the house and was going to live there with him but she never came over to live with him permanently.

An employee of defendant testified that she worked in the liquor store for defendant for over four years; that plaintiff came over there the week ends; that she said she did not like it there but after her son and daughter were married she

might consider living there; that defendant had been remodeling the house for some time; that Mr. Perry personally spent about "three hours every day" in and out of the liquor store "taking care of" the stock and helping the clerks out during the time she worked there; that defendant maintained a room in his house in Winterhaven during this period.

A deposition of defendant's former wife was read into evidence and she stated she had known defendant since 1926 and that he "lives at Winterhaven, California."

In *Chambers* v. *Hathaway,* 187 Cal. 104 [200 P. 931], it is said (quoting from the syllabus) : "Where a person has two dwellings in different places and resides a part of his time in one place and a part of the time in another alternately, the question which of the two places is his legal residence is almost altogether a question of his intent." And quoting from 9 Ruling Case Law, page 558, it was said: "If a party has two residences, that will be esteemed his domicile which he himself selects or deems to be his home, or which appears to be the center of his affairs, or where he votes or exercises the rights and duties of a citizen." (See, also, *Petition of Oganesoff,* 20 F.2d 978, 980; *Smilie* v. *Smilie,* 24 Cal.App. 420 [141 P. 829] ; *De Tolna* v. *De Tolna,* 135 Cal. 575 [67 P. 1045] ; Civ. Code § 129; 28 C.J.S. 32.)

There was evidence showing that defendant never intended to become a resident of San Diego County and that he maintained Winterhaven as his residence for more than the required time.

As a precautionary measure, counsel for defendant filed a motion in this court to take additional testimony on that subject in case we believed that the evidence produced was not sufficient, and in support thereof filed defendant's affidavit stating that for a number of years last past he maintained his home at Winterhaven and voted there since 1936; and that it was never his intention to become a resident of San Diego County. He accompanied this affidavit by a certificate of registration and by his voting record in that county from 1936 to 1948 inclusive. Since the evidence produced was sufficient to support the finding, the motion should be denied.

It is next contended that the finding against plaintiff's claim of extreme cruelty of defendant is not supported by the evidence. There were mutual charges of cruelty. Plaintiff stated that she was very happy for three years until defendant started to drink too much. She said: "I didn't like it, but I

never tell him, and then he start to be very cruel with me on account of my kids.'' Other charges were that she liked to be with her Mexican friends and talk Spanish and that he did not enjoy their company because he did not understand it. Defendant denied many of her claims and the trial court found against her. ■ The habits and dispositions of different named persons vary so much that it is impossible to lay down any universal rule as to what acts constitute extreme cruelty sufficient to furnish grounds for divorce. The Legislature has necessarily employed that general term and left each case, where contested, to be determined according to its own peculiar circumstances in the sound judgment of the court. Its findings will not ordinarily be disturbed unless it clearly appears that the trial court has abused its discretion or made an error in examining the evidence. (*Shaw* v. *Shaw*, 122 Cal.App. 172 [9 P.2d 876] ; *Fleming* v. *Fleming*, 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124].)

■ The next charge is that there was not sufficient evidence to support the finding that plaintiff was guilty of desertion and that such desertion existed for a period of one year prior to the filing of the cross-complaint. There was evidence that defendant previously lived in Winterhaven and continued to maintain that place as his residence thereafter ; that plaintiff agreed to come there to live with him when he remodeled the house ; and that the house was remodeled prior to the date of the separation. The evidence as to the exact date of separation is confusing and in conflict. Defendant testified that it was ''about the first of February, sometime around there, January, or the first of February'' and that they did not live together after January, 1947.

It is provided in section 103 of the Civil Code that ''The husband may choose any reasonable place or mode of living, and if the wife does not conform thereto, it is desertion.'' (See, also, Civ. Code, § 156.) Section 104 of the Civil Code provides that if the place or mode of living selected by the husband is unreasonable or grossly unfit, and the wife does not conform thereto, it is desertion on the part of the husband from the time her reasonable objections are made known to him. (See, also, *Kessler* v. *Kessler*, 2 Cal.App. 509 [83 P. 257] ; 9 Cal.Jur. § 36, p. 664; *Hardenbergh* v. *Hardenbergh*, 14 Cal. 654.) According to plaintiff's testimony defendant asked her in the fall of 1945 to come over there and live with him and that she then told him she would. Some time prior to the separation defendant took over the entire house in

Winterhaven, remodeled it, installed linoleum, rugs, a frigidaire, electric stove, and other equipment. Plaintiff's testimony is that she decided not to come to the defendant because she felt obligated to live with her children in San Diego. She did not return to Winterhaven, even for week ends after their separation, which was alleged and found to have occurred on or about January 3, 1947. The trial court specifically found that defendant "provided a suitable home for her at Winterhaven, where his business properties were located; that she preferred to live in San Diego in her own home with her daughter." The intention of plaintiff to remain in San Diego with her daughter and not to come to Winterhaven was clearly expressed in her conversation with a Mrs. McBride, in the fall of 1946. Plaintiff failed to establish her allegations of cruelty, and consequently her withdrawal from or refusal to live with defendant at Winterhaven cannot be predicated upon defendant's claimed cruelty. The evidence is conflicting and the findings made by the trial judge, who had the parties before him and the opportunity to question them, will not be disturbed on appeal. Considering all of the evidence produced on this subject, there was sufficient evidentiary support for the court's findings. (*Kusel* v. *Kusel,* 147 Cal. 52, 56 [81 P. 297]; *McLachlan* v. *McLachlan,* 101 Cal.App. 106 [281 P. 512].)

Lastly, plaintiff complains because the trial court denied her application for additional costs and attorney's fees in connection with her motion for a new trial and to prosecute this appeal, citing such cases as *Westphal* v. *Westphal,* 122 Cal.App. 379 [10 P.2d 119]; *Norris* v. *Norris,* 50 Cal.App.2d 726 [123 P.2d 847]; and *Kyne* v. *Kyne,* 74 Cal.App.2d 563 [169 P.2d 272]. The motion was based upon "the record" and her affidavit. Defendant filed no counteraffidavits.

Originally, the trial court granted plaintiff's application for costs and attorney's fees and support pendents lite in a generous amount, apparently based upon plaintiff's claim that defendant had a "financial worth of approximately one million dollars." After trial, the judge found that this allegation was not true and that defendant owned about $75,000 worth of property prior to his marriage to plaintiff and that much of this property was held in joint tenancy with defendant's former wife; that defendant was entitled to keep his automobile and plaintiff entitled to keep hers as well as the San Diego home and its furnishings and to retain the money paid

thereon by defendant as a gift from defendant, and further found that there was no other community property.

The general rule is that the granting of attorney's fees on appeal is clearly in the sound discretion of the trial court and there is no absolute right in the defeated wife to prosecute an appeal at the expense of the husband where the trial court is satisfied, from the record before it, that the proposed appeal is not undertaken in good faith, or with reasonable belief that it has merit. The trial court was justified in denying the application. (*Gay* v. *Gay,* 146 Cal. 237 [79 P. 885]; *Kellett* v. *Kellett,* 2 Cal.2d 45 [39 P.2d 203].) From an examination of the entire record, it appears that all of these matters were fully considered and were questions for the trial court, in its sound discretion, to determine. No abuse of discretion appears. (*Argabrite* v. *Argabrite,* 56 Cal.App. 650 [206 P. 81].)

The questions presented on the appeal from the several orders have been reviewed and no reversible error has been found.

Motion to take additional testimony denied. Order denying additional attorney's fees and costs affirmed. Judgment affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied October 20, 1949, and appellant's petition for a hearing by the Supreme Court was denied November 17, 1949.