[Civ. No. 2211. Fourth Appellate District.—March 14, 1939.]

RUTH B. DeTRAY, Respondent, v. GEORGE P. HIGGINS et al., Appellants.

Borton, Petrini & Conron for Appellants.

Brittan & Mack for Respondent.

GRIFFIN, J.—This is a case in which Ruth B. DeTray, formerly Mrs. Newcomb, obtained judgment against George P. Higgins and Edith Cross Higgins individually, and George P. Higgins and Edith Cross Higgins doing business as Higgins & Higgins, formerly known as Cross Brothers, a copartnership. The judgment is for $5,800. This judgment is based upon a purported promissory note reading as follows:

"June, 23, 1931.

"We, the undersigned agree to pay to Ruth B. Newcomb or her heirs, Whitfield and Maxine Newcomb, at the end of five years, the sum of Six Thousand ($6000.00) Dollars.

"In case buildings are sold during this period (in which all parties concerned agree to said sale to be a just one) the amount of money received shall be divided but not to exceed the above amount.

"Cross Brothers
"By: (signed) Edith Cross Higgins
"By: (signed) George P. Higgins
"ECH/gh."

The background of the above instrument goes back to April, 1925, when, after the death of Mr. Cross, Edith Cross, the widow (now Mrs. Higgins), secured the services of Mr. Verne Newcomb. Mr. Newcomb and a Mr. Dettra were employed by the present Mrs. Higgins under an arrangement whereby, in addition to a fixed salary, Newcomb and Dettra each received one-third of the net profits. From their two-

thirds of the profits $1200 per year was deducted and credited to a building fund. A written agreement between Newcomb and Mrs. Cross to such effect was entered into on October 11, 1928. In March of 1929 Dettra withdrew from the business. Thereafter, the original agreement between Mrs. Cross and Newcomb was superseded by an arrangement whereby he was to receive one-half of the net profits in addition to his salary, and the $1200 credit to the building fund was deducted from his share of the profits.

At the time of Mr. Newcomb's death in March of 1931, there was a $6,000 credit to the aforesaid building fund. The arrangement between Newcomb and Mrs. Cross had been set up in the form of instructions to the firm's bookkeeper, written in the firm books. Within ten days after Newcomb's death, Mrs. (Cross) Higgins informed Mrs. Newcomb, the present Mrs. DeTray, that Mr. Newcomb had had an investment in the firm and buildings and offered her the money in cash.

Thereafter, in June, 1931, Mr. and Mrs. Higgins, defendants herein, made, executed and delivered the promissory note on which this suit is brought. Due to the fact that Mrs. Newcomb's interest was to protect her children, the children were made alternate payees in the note. At the maturity of the note no payment was made thereon, and, in fact, Mrs. Higgins had informed the payees that the note would not be paid when it matured. Mrs. Higgins continued to operate the business known as Cross Brothers until 1933, when she turned the business over to her new husband and his son, who have since continued to operate the business under the name of Higgins & Higgins, occupying the buildings and using the equipment formerly belonging to Cross Brothers.

No accounting of any sort has ever been made of the profits of Cross Brothers nor of the value of the buildings and equipment belonging to it, nor has any of the $6,000 been paid. The books of the business have been destroyed by the appellants and no accounting at the time of trial was possible.

Before going into a detailed relation of the evidence and questions presented, it is well to consider the issues as made by the pleadings. The verified first amended complaint al-

leged: "That on or about the 23rd day of June, 1931, the defendants for a valuable consideration made, executed and delivered unto the said plaintiff herein a certain promissory note in writing, wherein and whereby the said defendants promised and agreed to pay to the plaintiff, five (5) years after June 23, 1931, the sum of Six Thousand Dollars ($6,000.00)."

The verified answer to this allegation denies that the defendants "received any consideration for the note described in said paragraph", but does not deny its execution and delivery.

The remainder of the amended complaint alleged (in paragraph II) a demand on defendants, a failure to pay, and that "the sum of Six Thousand Dollars ($6,000.00), together with interest thereon from the 23rd day of June, 1936, at the legal rate, is now due, owing and unpaid". The answer does not deny any of this paragraph except the demand.

The answer further sets up a lack of consideration and in a special defense it is alleged that Mrs. DeTray and Mrs. Higgins agreed to share losses from the business by an oral agreement of April, 1931, that Mrs. Higgins also agreed to give Mrs. DeTray one-half the profits out of that business conducted by Mrs. Higgins and Mr. Newcomb, prior to his death, and that no profits ever existed. The last defense is that "said note" was given to plaintiff to secure any debt which might arise out of the business done by Newcomb and Mrs. Higgins.

In the amendment to the first amended complaint respondent alleges: "That in said promissory note it is further provided that in case buildings are sold during this period (in which all parties concerned agree to said sale to be a just one), the amount of money received shall be divided but not to exceed the above amount. That said buildings have not been sold by the defendants herein during any of the times herein mentioned." In answer to this, appellants allege that the building was sold in "1930" for the sum of $4,000.

The trial court in this case adopted a plan throughout the trial of reserving his rulings and allowing the appellants to introduce into evidence all of their testimony which

they had available for the purpose of making out any of their defenses, and apparently disregarded all of the objections of the respondent under the tacit understanding had by the court and both counsel that this procedure would be adopted towards all evidence of this nature offered during the trial.

The record reveals that when appellants offered certain evidence respondent's counsel objected thereto and the evidence was tendered into the record subject to the reserved ruling of the court upon respondent's objections. The evidence in point, in addition to other matters, bore upon the issue of delivery and consideration for the note upon which judgment has been rendered.

Appellant now contends that the court committed error by not deciding reserved rulings upon the admission of evidence showing absence of delivery and consideration. The findings of fact of the court are to the effect that the note had been properly executed and founded upon a consideration. Appellant claims that the action of the court in reserving rulings amounted to a sustaining of respondent's objections to the evidence offered by appellants to show an absence of delivery and of a consideration for the note sued upon by respondent, citing *Van Haaren* v. *Whitmore,* 2 Cal. App. (2d) 632 [38 Pac. (2d) 829]; *Clopton* v. *Clopton,* 162 Cal. 27, 32 [121 Pac. 720]; *Citizens Bank* v. *Jones,* 121 Cal. 30, 33 [53 Pac. 354].

Whether the uncommendable practice of reserving rulings with a subsequent failure to rule thereon will be ground for reversal in any given case, ordinarily depends upon the particular circumstances of that case. (*Ebner* v. *West Hollywood Transfer Co.,* 45 Cal. App. 186, 191 [187 Pac. 114].) Such practice of reserving rulings may work substantial injury to a litigant and when it can be shown that such result follows, the error is considered to be of sufficient gravity to call for a reversal. (24 Cal. Jur. 776.) Analyzing the situation in the case at bar, the appellants have suffered no prejudice. Did the court decide the case on any evidence improperly admitted against the losing party? We think not. The appellants, who were the losing parties in this case, are not complaining of any evidence which the respondent offered in this case on which the ruling was reserved,

but they are asking this court to assume that their own evidence was stricken out and not considered by the trial court.

The failure to rule upon the objection did not deprive the losing party of the right to put in evidence. It will serve no useful purpose to relate *in toto* the objections made by respondent to the testimony of appellants and the wording of the reserved rulings of the court. Suffice it to say that, in general, they are as follows: The Court: "I am going to hear it subject to motion to strike it out of the record." Mr. Mack: "Just to be sure my record is complete, that will be true of all this testimony that comes in?" The Court: "Yes."

Appellants now ask this court to make the assumption that none of the appellants' evidence was received and that the entire line of testimony of the appellants, competent and incompetent, was stricken by the court when it decided the case in favor of the respondent. We do not believe this to be a proper assumption nor is it supported by the authorities cited. In each of those cases cited it was applied only to inadmissible testimony. The trial court stated at the time the evidence was admitted, that he was going to admit all of it, and considered it, and from the result of the findings it apparently did so.

The holding in *Estate of Wempe,* 185 Cal. 557, 564 [197 Pac. 949], is quite applicable to the instant case, wherein the court said: "The testimony was admitted only tentatively and subject to a motion to strike out to be argued later. Such motion was not made. The failure to make it under the circumstances was a waiver of the objection."

Volumes of evidence were received, under the above ruling, touching all phases of the defenses claimed, and the trial court was particularly careful to indulge the appellants in fully and fairly hearing all they desired to offer. No motion to strike any of the evidence was ever made. We are not prepared to hold that any such error in failing to rule upon the objection of respondent resulted in prejudice to appellants. We believe the facts recited bring the principal case within the rule laid down in *Clopton* v. *Clopton, supra,* wherein it is said:

"Complaint is made that the court failed to rule on defendants' objection to testimony given by plaintiff . . . The

court reserved its ruling, receiving the evidence subject to the objection. Apparently it has never formally ruled on this objection, except in so far as a ruling against the objection is to be inferred from the fact that the court has found upon the facts so testified to in favor of plaintiff. The matter must here be regarded as though defendants' objections had been formally overruled and exceptions noted to such rulings."

Also, in *Ames* v. *Employers Casualty Co.*, 16 Cal. App. (2d) 255, at p. 263 [60 Pac. (2d) 347], we find this expression:

"During the trial certain objections to the admission of evidence were made and rulings thereon were reserved; but the evidence was admitted. Thereafter the trial court did not expressly rule on said objections. The defendant assigns the failure of the trial court to rule as prejudicial error. As just stated, the evidence was admitted. As it was not later excluded, it is now in the record. The defendant does not specify any single piece of evidence that was so admitted and also specify its objection thereto except as will hereinafter be duly noted. The mere fact that the trial court did not make a specific ruling on each objection was not prejudicial error. . . . As intimated above, if the admission of any part of the evidence was a prejudicial error, such fact should have been specially called to our attention, but the defendant has not made any assignments to that effect."

In *Ebner* v. *West Hollywood Transfer Co., supra,* it was held that "Where the reservation of a ruling is a mere irregularity, and does not result in any real injustice to the appellant, the judgment will not be disturbed upon appeal for this reason."

Divorced from other circumstances, the failure of the court to rule before the conclusion of the trial did not deprive the losing party of any right to put in any other evidence or to rebut testimony. It is indubitably necessary to make such a showing before a contrary holding would be justified. (*Stanwood* v. *Carson,* 169 Cal. 640 [147 Pac. 562].)

Appellants next advance the argument that the instrument sued upon was not intended to be a promissory note but only an acknowledgment of the amount respond-

ent's deceased husband had put into a certain building fund. As between the parties, the face of the note itself contains language which characterizes the intent of the parties to the transaction.

The appellants admit in their answer that the promissory note sued on was made, executed and delivered as alleged in the complaint, and that it was due, owing and unpaid, but allege lack of consideration and that it was payable out of the profits arising from the liquidation of the business venture between Newcomb and Mrs. Higgins. It will thus be seen that there was injected into the pleadings two conditions on which appellants attempted to defeat the respondent. First, that the note was to be paid out of a sale of certain buildings and that such a sale had taken place, netting only $4,000. Second, that the note was payable out of a particular fund, i. e., profits out of the business venture mentioned, and that no profits arose. Under a written agreement between Mr. Newcomb and Mrs. Higgins a credit was set up on the books of the company to which was paid $1200 a year for five years. This was known as a building fund. This $1200 a year came out of Mr. Newcomb's share of the profits under the above-mentioned agreement. It was Mrs. Higgins' contention at the trial that any bad debts of the business were to be charged back against this $1200 fund and that seems to be her main defense in this action, i. e., that sufficient bad debts existed so that this fund was entirely exhausted.

Mrs. DeTray testified that at the time Mrs. Higgins came down to see her she offered her $6,000 in cash; that she did not need the money then because she had just received her husband's insurance money; and that Mrs. Higgins told her that the money could be left in the buildings until the children needed it.

The evidence in reference to the intentions of the parties as to the nature of the business relationship of the various parties involved and as to the many transactions and book accounts is replete with inconsistencies and conflicts and sets forth an inexhaustible enumeration of items claimed to be chargeable against this particular fund and which, if allowed, would entirely cancel the indebtedness under the note. Suffice it to say that after thorough and painstaking considera-

tion of the entire record and without relating the testimony at length, we are convinced that the evidence produced adequately supports the court's finding that such claimed deductions were not allowable and that the clear intention of the appellants was to pay to respondent or her heirs the sum of $6,000 at the end of five years for such interest in the business as she or her deceased husband may have had, with the exception that in case the buildings were sold in the meantime (with their mutual consent) instead of the amount above specified, respondent would receive one-half of the proceeds of the sale, not exceeding $6,000.

Apparently, it was upon this theory that the trial court considered the evidence and found that there was due from appellants the sum of $5,800. It further appears from the record that on June 8, 1935, an advancement in the sum of $200 was made by appellants to a minor daughter of respondent. Credit was allowed on this note for this payment.

 This court's duty begins and ends with the inquiry whether the trial court had before it evidence upon which an unprejudiced mind might reasonably have reached the same conclusion arrived at by it. We see no reason to disturb this finding. It appears from the testimony that Mrs. Higgins transferred the "buildings, equipment, etc.", to George P. Higgins, her husband and co-signer of the note, and George S. Higgins, step-son of Mrs. Higgins, by bill of sale dated June 16, 1933. Under this purported sale Mrs. Higgins was to receive the sum of $30,000 on the surprisingly low terms of $1. down and the balance to be paid at the rate of one-half the net profits, at the end of each and every year, of the firm of Higgins & Higgins, who thereafter took over the entire business. Title was not to pass until the full purchase price was paid. All parties testified that this alleged "sale" was never called to Mrs. DeTray's attention at any time either before or after it was made. She was neither consulted about the price nor informed about the deal, nor was any attempt made to account to her for the profits thereof. It was claimed at the time of the trial that this agreement or bill of sale was for the large sum of $30,000 because it included inventory in addition to the buildings and equipment; that the value of the buildings referred to in the note only amounted to $4,000. However, Mrs. Hig-

gins testified that she did not know what the amount of the inventory was in 1933 and never produced figures to show what it actually was.

George S. Higgins, the step-son of Mrs. Higgins, also testified that the amount of the inventory at the time the business was purchased by him was beyond his ken.

Even assuming that this transaction can be raised to the dignity of a legitimate sale, the trial court was justified in holding that respondent was entitled to the sum of $6,000 as her proportionate share under the sale. If it assumes the reverse character (and we may pause to remark it seems to have been the proper one) no *bona fide* sale was made and most certainly the attempted sale was never consented to or ratified by respondent. We see no merit to this claim of appellants.

The remaining contention is that respondent brought the wrong form of action, claiming that the business relationship between appellant Edith Cross Higgins and the deceased husband of respondent had raised certain reciprocal rights and obligations which required that an accounting be had before it could be determined whether the appellant was indebted to respondent, citing *Johnstone* v. *Morris,* 210 Cal. 580 [292 Pac. 970]; *Mosher* v. *Helfend,* 7 Cal. App. (2d) 48 [44 Pac. (2d) 1050]; *Quackenbush* v. *Sawyer,* 54 Cal. 439, 441.

Whether the facts and circumstances of this case and the agreements between the parties above mentioned constituted a partnership is problematical. In order that we may be forgiven for our failure to attach the proper cognomen to this relationship, we will quote a colloquy between counsel for the appellant and the court:

"The Court: In other words, the partnership ceased on his (Newcomb's) death. Mr. Petrini: Well, of course we contend there wasn't a partnership; we don't know whether it is a partnership, at least that is off the record. . . . Mr. Mack: Do you claim now Mr. Newcomb and Mrs. Cross had a half interest in all of the business? Mr. Petrini: No, no. I really don't know what I contend in that respect; we will simply have to let all the facts go in and then decide whether this is a partnership or not. . . . Mr. Mack: In other words, you have no definite theory on the case at all. Mr. Petrini: I don't know whether there was a partnership or not; my

opinion is there was not. . . . The Court: I don't know what you would call it, Mr. Petrini, if you wouldn't call it a partnership, so far as the evidence has now gone; you can call it any kind of a baby if you want to, it still remains the same baby. Mr. Petrini: Yes, frankly, I am not satisfied myself that it is or is not a partnership; in any event, I think the results will probably be about the same, but not in this particular action, however.''

We do not believe it is essential to the issues presented to make a determination of this fact. The accounting was apparently had under the pleadings as they were framed. The evidence discloses no outstanding demands against the claimed partnership and no outstanding debts to be collected or that could be collected. In many cases it has been held that an accounting is not necessary. (*Wilson* v. *Brown,* 96 Cal. App. 140 [273 Pac. 847]; *Shuken* v. *Cohen,* 179 Cal. 279 [176 Pac. 447]; *Sturges* v. *Swift,* 32 Miss. 239; *Case* v. *Maxey,* 6 Cal. 276; 20 Cal. Jur. 763, sec. 71.)

*Clark* v. *Fowler,* 57 Cal. 142, was a case in which one partner gave another his note for the seller's interest in the business. The court found that the note was given by defendants to plaintiffs in consideration of the purchase by the former from the latter of all the plaintiffs' interest in and to all the partnership property and stock on hand undisposed of. The court further found that said promissory note was executed at the time of the dissolution of said copartnership and was not any part of said copartnership affairs and transactions, and held that the suit on the promissory note was proper. In that action appellant contended that an action at law would not lie on a note given by a partner to his copartner when there had been no final settlement of the partnership dealings. The court held that it was a sufficient answer to that objection to say that defendant instituted the inquiry as to the partnership transactions and therefore he was not prejudiced by it. Partnerships may be dissolved by retirement of one of the partners (*Ross* v. *Cornell,* 45 Cal. 133) or by agreement of the partners. (*Wagner* v. *Wagner,* 50 Cal. 76.)

We believe from the record before us that the trial court would be fully justified in finding that the appellants never intended accounting to the respondent for anything; that they had taken over the business in its entirety; that the books

were deliberately destroyed or secreted; that all of the money collected was used for appellants' benefit; and that a further accounting under different pleadings would be unnecessary and unjustifiable.

A promissory note is presumed to have been given for a sufficient consideration under section 1614 of the Civil Code and in an action thereon, the introduction of the note in evidence establishes a *prima facie* right to recover according to its terms. The burden of showing a want of consideration, under section 1615 of that code, is cast upon the party seeking to avoid it, and if he fails to make this showing, the presumption prevails and furnishes sufficient evidence to support a finding that the note was given for a good and valuable consideration. The trial court resolved this issue against appellant. We find no reason to disturb the finding.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.