[Civ. No. 4610.   Fourth Dist.   Mar. 25, 1953.]

GEORGE WILLIAM SCHORR et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

West, Vizzard, Howden & Baker for Appellants.

Borton, Petrini & Conron for Respondents.

BARNARD, P. J.—This is a damage action arising out of a collision between an automobile driven by the plaintiff husband and a freight train owned and operated by the defendants. The court, sitting without a jury, found that the allegations of negligence in the complaint were not true; that it is not true that any of the defendants had been guilty of careless or negligent conduct "in any way whatsoever or at all"; that it is not true that the plaintiff had sustained any injuries as a proximate result of any negligence on the part of the defendants; that it is not true that any of the defendants were careless or negligent in any particular on this occasion; that the affirmative defense of contributory negligence set forth in the answer is true; that the accident occurred without fault or neglect on the part of any of the defendants; and that the accident was caused by the carelessness and negligence of the plaintiff husband in driving his automobile. The plaintiffs have appealed from the judgment which followed.

The accident occurred about 1:30 a.m. on November 20, 1949, at a point where United States Highway 395 crosses the Owenyo branch of the Southern Pacific Railroad in the desert area of Kern county. Just north of this crossing the highway curves gradually to the left before crossing the tracks at a right angle. As the appellants were approaching this

crossing from the north on this highway a 50-car freight train was moving across the crossing in a westerly direction at about 15 miles an hour. The freight cars were painted red. The automobile ran into the eighth car from the rear of the train, causing the damage complained of. There was a standard cross-arm sign 12 feet from the first rail; a painted white crossing sign on the pavement 336 feet north of the crossing consisting of two broad lines across the pavement with a large "X" and the letters "R. R." in between; and another 24" reflectorized crossing sign near the road about 450 feet north of the crossing with a large "X" and the letters "R. R." which had on them "little buttons that reflect in the light of your automobile."

The appellant husband, who was driving, testified that he did not see any signs that there was a railroad crossing there until he got up close to the tracks, and heard no whistle or bell; that he first saw the train when he was about 35 or 40 feet from it; that he was going about 40 miles an hour and had good lights; and that his headlights did not show the train "until after I was around the curve." There was evidence, and the appellants so state, that a motorist could see the crossing only during the last 240 feet before reaching it. It also appears that the highway was on the same level as the tracks at a point 135 feet north of the tracks, that it descended one foot in the next 65 feet, and that it then rose one foot in the last 70 feet before reaching the tracks.

A traffic officer, who investigated the accident the next day, testified that he found skid marks extending 24 feet north of the north rail at this crossing. He testified that he traveled across this crossing that night, November 21st, going from north to south; that when he was 230 feet from the crossing he had vision of the railway about 20 feet west of the crossing; that as he came around the curve his lights shifted across the tracks; that the road is straight before you come to the curve; that the crossing sign painted on the highway is just as you go into the curve; that this painting on the highway looked like it was either faded or that a bad grade of white had been used; that the reflectorized "R. R." sign farthest to the north was visible as you approached at night for about half a mile; and that this sign was less conspicuous than it would otherwise have been because of reflectors on posts along the side of the curve in the highway.

A man who was also driving south on this highway and who arrived at the scene immediately after the accident and before the train crew got there, testified that when he was 250 feet

away he saw the appellant husband standing by the road and waving his hand, and that he had no difficulty in bringing his car to a stop. There was evidence that the crossing signs above referred to, except the crossarm signal at the tracks, were installed by the Highway Department, maintained by them, and were of the usual type; and that on this occasion a whistle was blown and a bell rung on the engine continuously for a quarter of a mile before the engine reached the crossing, but not thereafter.

Some pictures were introduced in evidence which were taken the next day after the accident. The traffic officer identified these as correctly showing the situation as he saw it on that day. These pictures were taken by a person standing in the center of the southbound lane of the highway about "where a driver would be in driving a car." The first of these, taken at a point 150 feet north of the track shows a clear and straight view of the crossing, the two crossarms in sight, and nothing to interrupt the view for a considerable distance on either side. The second, taken from 300 feet north of the track, shows a slight curve in the road, a clear view of the crossing and the crossarm sign, and nothing on either side to interrupt the view. The third, taken from 370 feet north of the crossing, shows the painted sign on the pavement which appears as clear as such signs usually are, gives a rather clear view of the whole road and the intersection, and shows the two crossarms at the intersection. Another picture, taken 500 feet north of the intersection, shows much the same view and shows the reflectorized sign at the right of the road. Sketches of the highway as it approached the tracks showing distances, elevations, etc., were introduced in evidence and explained by the surveyor who prepared them.

The appellants contend that they were prevented from having a fair trial by the exclusion of their evidence of the extremely dangerous condition at this crossing which prevented them from seeing the train in time to avoid it; that the finding that the respondents were not negligent cannot be explained on any theory other than that this evidence, as to the dangerous condition of the crossing, was excluded; that it was clearly negligence to let a long freight train lumber through this crossing at night without ringing a bell or blowing a whistle, and without waving a lantern or throwing out a flare; and that if the dangerous nature of the crossing was considered the appellants could not have been guilty of negligence in

failing to see the various signs and in failing to appreciate the danger.

■ It is first contended that the court erred in striking from the complaint certain allegations to the effect that the respondents knew that this crossing was unusually dangerous and was obstructed from the view of the appellant driver as he approached it from the north because of the curve in the highway. This allegation was struck out on motion by another judge prior to the trial of the action. The matter struck out was evidentiary in character, and no prejudice resulted since the evidence as to the actual conditions at this crossing was thoroughly gone into at the trial and much of it, including the maps, charts and pictures, was specifically admitted with out objection.

■ It is next contended that the court committed prejudicial error in failing to expressly rule on the admissibility of the evidence regarding the dangerous condition of the crossing; that this evidence was admissible under the general allegation of negligence; that it must be presumed that the objection to this evidence was sustained; and that in view of the substantial nature of the evidence of respondents' negligence it cannot be presumed that the court's decision would have been the same had the evidence of the dangerous condition of the crossing been admitted.

While counsel for the appellants was making his opening statement, counsel for the respondents suggested that the allegation concerning the dangerous crossing had been stricken. After some discussion the court stated that a hasty reading of the complaint seemed to indicate the theory of negligent operation, but added "there is an allegation here that the crossing was dangerous and hazardous." When the first witness was called, counsel for the appellants asked whether or not the allegations of the complaint were approved as to the negligent operation of the train. The court stated that he had not had an opportunity to study it carefully but this seemed to be the theory of the case. Counsel for the appellants then said "We would like to put in all the evidence then if the court desires to strike some of it later, that would be another matter." Counsel for the respondents stated that he wanted the record to show his objection to any evidence bearing upon the dangerous condition of the crossing, and asked for a stipulation that such an objection be considered as made so he would not have to object every time a question was asked. Counsel for the appellants said he would stipulate to that,

and the court then said: "All right then, with that understanding we will proceed."

A great deal of evidence was received with relation to the actual conditions at this crossing, including surveyors' maps with the surveyors' explanation, photographs taken the next day, and the testimony of witnesses. While there was a stipulated objection to this line of testimony, which was never directly ruled on, there was no motion to strike and under the stipulation the evidence was not received subject to a motion to strike. The evidence was received under the agreement referred to, that all of the evidence would be put in and if the court desired to strike it later that would be another matter. The court expressed no such desire, nothing further was done, and the only reasonable inference to be drawn from the record is that this evidence remained in the record and was considered by the trial court. Under the circumstances, no prejudicial error appears. (*DeTray* v. *Higgins,* 31 Cal.App. 2d 482 [88 P.2d 241].) Under the court's findings, that this accident was caused solely by the negligence of the driver of this automobile, it would be unreasonable to assume that the court disregarded all this evidence with relation to the existing situation at this crossing, to which the major part of the trial was devoted, or to believe that the findings would have been any different had an express ruling been made with respect to the admission of this evidence.

It is further contended that the court committed prejudicial error in refusing to permit the cross-examination of members of the train crew regarding other accidents. Each of these witnesses was asked on cross-examination whether he had ever known of an accident at this crossing prior to this one, on a night which was dark, clear and cold and under conditions similar to those on this particular night. An objection was sustained. It is argued that these questions were material on the subject of the employees' knowledge of the dangerous condition as well as the degree of care which was required in view of such knowledge, and reliance is placed on such cases as *Martindale* v. *Atchison, T. & S.F. Ry. Co.,* 89 Cal.App.2d 400 [201 P.2d 48]. The questions related to accidents in general and the similarity of general conditions as to time and visibility, but no effort was made to inquire as to other accidents where an automobile had run into the side of a freight train. No attempt was made to establish any similarity on this important condition, and any evidence on other kinds of accidents would have been far less material.

Conceding that answers to these questions should have been permitted, no prejudice appears in view of the full and complete hearing with respect to the circumstances of this accident, and the full showing of all facts in connection with the situation and conditions at this crossing, as disclosed by the record.

The appellants' motion to correct the reporter's transcript by striking one word therefrom is granted.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied April 13, 1953, and appellants' petition for a hearing by the Supreme Court was denied May 21, 1953.