[Civ. No. 16942.   First Dist., Div. One.   Nov. 26, 1956.]

ROBERT T. McCARTHY et al., Respondents, v. WILLIAM DENNIS BARTON et al., Appellants.

Robert J. Drewes and Dinkelspiel & Dinkelspiel for Appellants.

John G. Evans for Respondents.

AGEE, J. pro tem.*—This is an appeal by defendants and cross-complainants, husband and wife, from that portion of a judgment which denied a recovery upon their cross-complaint against plaintiffs and respondents, also husband and wife.

Appellants operated a business under the name of Consolidated Plastics. Respondents owned a parcel of land im-

*Assigned by Chairman of Judicial Council.

proved by a building. The parties agreed to exchange an 80 per cent interest in the business for the real estate.

A written contract of sale was prepared by appellants' attorney. It contained the following express warranty: ''The net worth of the business as of the date of sale according to good general accounting practices will not be less than the net worth of said business as shown on the attached Balance Sheet of February 28, 1953, of Consolidated Plastics.'' (Said balance sheet showed a net worth of $70,372.13; 80 per cent of $70,372.00 is $56,297.60.) The contract contained no representation as to the cost or value of the real property being conveyed by respondents.

The respective transfers took place on or about May 5, 1953. In the action thereafter commenced by respondents against appellants, the trial court found that there had been a breach of said warranty and rendered judgment in favor of respondents for $9,718.05, that being the difference, as found by the court, between the true net worth of the interest in the business received by respondents and the warranted net worth thereof, to wit, $56,297.60. This judgment has been paid and appellants have abandoned their appeal therefrom.

Appellants' cross-complaint is based upon the allegations that respondents falsely represented the net cost to them of the land and building as $59,297.60 and that they were induced to enter into the contract in reliance thereon. Judgment for the difference between the alleged cost and the actual cost was prayed.

The trial court found that no such representation had been made and that appellants were not so induced. Appellants contend that there is not sufficient evidence to support such a finding. We do not agree. The record shows that the parties were primarily concerned with *valuation* and that cost came into the transaction only incidentally. The finding that appellants had not been induced to enter into the contract by any representation as to cost is likewise supported by the record. We need refer only to a portion thereof. Appellant Barton himself testified as follows:

''Q. What method was determined by you and Mr. McCarthy for fixing the valuation of the real property which was transferred by the McCarthys to you for the agreement that you have before, and your subsequent bill of sale of eighty per cent in the Consolidated Plastics? A. I took part in no discussions with Mr. McCarthy as to arriving at that. He simply told me what it was worth, and that was that.

"Q. What did Mr. McCarthy say to you about the property? A. You are asking for ten days' discussions.

"Q. Well, in substance, what did he say to you with respect to the property that was being transferred? A. That was——That it was an automobile agency, a business that he had built and—well, which he had built after his experience in the Mid-west as a Chevrolet dealer, and prior to that as a vice-president of the Chevrolet Company, and representing long years of experience in the business as a successful going business.

"Q. Did he tell you how much a month that he was receiving from the building? A. Yes, $1,000.00.

"Q. And did you verify that before you consummated this agreement of May 1, 1953? A. We received the lease, yes; that would be confirmation.

"Q. And did he tell you how much he paid for the property? A. *No,* he only—*never, at any time.* We didn't buy it. I guess that is the reason he didn't refer to it that way.

"Q. Did he ever tell you how much he paid for the land? A. He referred to it in the total figures only.

"Q. Well, will you answer the question this way: did he ever say how much he paid for the land? A. *Not to my knowledge.*

"Q. Did he tell you how much he had spent in building the building? A. He only referred to it in the total *values* of land and building.

"Q. But, he didn't tell you how much the building cost him to construct? A. Right at this moment I don't recollect it, no." (Emphasis added.)

Appellants' attorney, who prepared the agreement, testified in part as follows: "Q. (by Mr. Evans) Will you look at the contract, Mr. Holstrom, and I will ask you this: Will you state why there is no representation in that contract with respect to the valuation or cost of the land that was transferred by the McCarthys to the Bartons? A. Because the valuation of the land was not definitely fixed at the time this contract was entered into. . . . THE COURT: Do I understand that you were drawing a contract here that Mr. Barton was to exchange his interest here in Consolidated Plastics for some land of which there had been no determination of its value at all? THE WITNESS: No, Your Honor. There had been an approximate determination of the value. These parties were exchanging equal assets for equal assets because they

were interested in the tax aspects of the matter and not having to report any capital gains tax, and all during the conversations and negotiations with these two parties, they were attempting to arrive at the values to be exchanged here, and there was no definite fixed value on either one of these assets until after this contract was entered into, as I recall.''

It will be noted that the parties were interested in *value*. And why should appellants be concerned with respondents' cost in considering a future tax liability? Assuming that the transaction was a ''like for like'' non-taxable exchange under section 112(b)(1) of the Internal Revenue Code of 1939, the appellants' cost basis for tax purposes would be ''the same as in the case of the property exchanged . . .'' (*ibid.*, § 113(a)(6).) If the property acquired in the exchange consisted in part of property permitted to be received without the recognition of gain or loss, and in part of other property, ''there shall be assigned to such other property an amount equivalent to its *fair market value* at the date of the exchange.'' (*ibid.*, § 113(a)(6); emphasis added.) Similar rules prevail under the 1954 Internal Revenue Code. (26 USCA, § 1031.) It is clear, then, that in a tax-free exchange, appellants would keep their old cost basis (of 80 per cent of plastics business) and respondents' cost of the real property would have no significance to appellants.

The trial court took under submission the respondents' objections to certain evidence introduced by appellants as to the cost of the real property. The record fails to disclose what, if any, ruling was made thereon and appellants argue that the objections are deemed to have been sustained because the trial court found in favor of respondents on the issue to which such evidence was directed. This is not a proper assumption (see *DeTray* v. *Higgins,* 31 Cal.App.2d 482, 487-488 [88 P.2d 241]) but we need not pass upon the point in view of the conclusion that there was no fraudulent representation as to cost and that appellants were not induced to enter into the contract by reason of any representation as to cost.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 26, 1956, and appellants' petition for a hearing by the Supreme Court was denied January 23, 1957. Schauer, J., was of the opinion that the petition should be granted.