[Civ. No. 17971. First Dist., Div. Two. Sept. 15, 1958.]

HARRY MARGOLIS et al., Plaintiffs and Appellants, v. JEANNIE TEPLIN et al., Defendants; MORRIE TEPLIN et al., Defendants and Appellants.

*Assigned by Chairman of Judicial Council.

528

Garry, Dreyfus, McTernan & Keller and Francis J. McTernan for Plaintiffs and Appellants.

Morris M. Grupp for Defendants and Appellants.

DOOLING, J. — Defendants Daniel Teplin and Morrie Teplin appeal from a judgment against them in the sum of $17,786.11, based upon findings that appellants conspired with defendant Henry Albers to remove distilled spirits from plaintiffs' liquor store and to appropriate the same to their own use and that pursuant to said conspiracy appellants did remove and appropriate from plaintiffs' store property of the value of $17,786.11.

Henry Albers was for many years a trusted employee in the liquor stores operated by respondents and their assignors. There were two of such stores in San Francisco. In November, 1954, respondents suspected that an inventory loss had occurred in their stores. An investigation led them to believe that their employee, Albers, was responsible for this loss. Albers admitted that he had taken substantial quantities of liquor from the stores in 1953 and 1954 and further stated that he had disposed of these liquors to appellants herein receiving from appellants about one-third of their sale value and appropriating the money so received to his own use. He gave respondents a statement in writing to this effect. Thereafter Albers gave a written statement to the police of the same character. (Both statements were hearsay as to the complicity of appellants in Albers' wrong-doing and the recital of his implication of appellants in these statements is here given solely for the purpose of clarifying the background of what followed.)

This action was thereupon commenced joining Albers, appellants, and certain others not here material, as defendants. Albers was arrested under a charge of grand theft based upon his appropriation of such liquors and while he was under arrest on this charge his deposition was taken by respondents at the city prison on May 17, 1955. Counsel for appellants was present and representing appellants at that time. Albers refused to answer any and all questions relating to his taking of liquor from respondents' stores, or relating to the connection of appellants, if any, therewith, and refused to answer

any and all questions as to the truth of the written statements above referred to. The notary, at the request of counsel for respondents, instructed Albers to answer many of these questions and he persisted in his refusal. The notary certified the proceedings before him and on June 8, 1955, at 10 a.m. proceedings were taken in open court by respondents to obtain the order of the superior court to compel the witness to answer the questions which he had refused to answer after being instructed by the notary to do so.

The witness Albers was present at that time without counsel. No one representing the appellants was in court but counsel for the respondents stated to the court at the beginning of the proceedings: ''Mr. Jackson represents all of the defendants except the one in question, Henry Albers, and I spoke to Mr. Jackson this morning, and he permitted me to inform your Honor that he had been given notice but had no desire to appear.''

After somewhat informal proceedings before the superior court it was suggested that the taking of Albers' deposition should be continued in the court room that same afternoon at 2 p.m. before a notary public in the absence of the judge. After some discussion Albers said: ''At 2:00 o'clock, then?'' The judge asked: ''Will that be all right?'' and Albers answered: ''That will be fine.''

At 2 p.m. on June 8, 1955, before a different notary Albers was again sworn and the taking of his deposition proceeded. The deposition as certified by the notary shows that ''Joseph A. Jackson . . . appeared as counsel for the defendants Morrie Teplin and Daniel Teplin.'' It further appears therein: ''It was stipulated by and between counsel for the respective parties that the said deposition shall be reported by HOLMES CHRISTIAN . . . and thereafter transcribed by him into typewriting, to be read to or by the said witness, who, after making such corrections therein as may be necessary, will subscribe the same.

''It was further stipulated that if this deposition has not been signed by the time of trial, provided the witness has had a reasonable opportunity to read, correct and sign the same, it may be used by either party at the trial with the same force and effect as if signed by the witness.''

Mr. Jackson thereupon requested a continuance of the taking of the deposition on behalf of Albers to permit Albers to procure counsel. He prefaced this request by the words: ''In the case wherein Mr. Margolis appeared this morning before

Judge Deasy, and Henry Albers appeared as a witness for the purposes of being certified to the Superior Court in this matter to answer certain questions propounded by him in a deposition, taken while he was temporarily a resident of the City Prison. . . .''

After requesting the continuance on behalf of Albers Mr. Jackson continued: ''I might add that this matter of certification came to my attention through Mr. Margolis a day or so ago. It is the first time I knew about it, as to the date, and I have never been served with copies of the questions propounded for certification, although I appeared at the time the deposition of Mr. Albers was taken . . . and though at said time I requested of the Court Reporter that I be given copies of that.

''Let the record show that Mr. Albers also has no copy of the questions to be propounded to him; for whatever effect that may have on this proceeding—I do not know at this time.

''It is now encumbent upon me to appear in Judge Arata's Court. . . .''

Whereupon the record shows that Mr. Jackson left the court room.

The taking of the deposition then proceeded. The deposition after being transcribed was later signed by Albers and duly certified by the notary.

At the trial the deposition of May 17, which had been certified by the notary but never signed by the witness, and the deposition of June 8 were both offered in evidence by respondents. Counsel for appellants objected to their introduction and after some discussion, at the court's suggestion, it was stipulated that the depositions shall be deemed read without waiving any objections made to the admissibility of the depositions and subject as to ''[a]ll the questions—all objections that would be available.'' The court reserved the ruling and did not act on the offer at any time during the trial. However the findings recite: ''Evidence both oral and documentary was offered, including the deposition and affidavits of defendant HENRY ALBERS, which the Court admitted into evidence. . . .''

So far as the deposition of May 17 is concerned we may concede the validity of appellants' objection that it was never read, corrected or signed by the witness. However we can find no prejudice in its admission since, because of the witness' refusal to answer, it contains no substantial evidence against these appellants.

The deposition of June 8 stands on a different basis since therein is found the only substantial evidence, apart from the admission of Morrie Teplin as to one isolated transaction, to support the findings upon which the judgment against appellants is bottomed.

 Appellants correctly complain of the irregular procedure of the court in not ruling on the admissibility of this deposition before the close of the trial. (*Clopton* v. *Clopton*, 162 Cal. 27, 32-33 [121 P. 720]; *DeTray* v. *Higgins*, 31 Cal. App.2d 482, 487 [88 P.2d 241].) However appellants not only produced their own testimony and that of other witnesses in contradiction of their implication in the appropriation of liquor from respondents' stores, but the court admitted by way of impeachment an affidavit of Albers repudiating his implication of appellants and expressly denying that they improperly received any of respondents' liquor from him. This affidavit could only have been introduced for the purpose of impeaching the testimony of Albers contained in the June 8 deposition. The only showing of additional testimony that might have been produced by appellants to contradict or impeach the testimony of Albers is a so-called affidavit of Albers' mother offered in support of appellants' motion for new trial reciting certain alleged conversations with Albers, Margolis and Ersunoff. This so-called affidavit is not in fact an affidavit. The certificate of the notary attached thereto is not a jurat but a certificate of acknowledgment. It does not recite that the witness was sworn by the notary but only that Maud Albers "duly acknowledged to me that she executed" the instrument. There is no legal showing that appellants were prejudiced in the production of their evidence by the irregularity in not ruling on the admissibility of the deposition before the close of the trial. The burden is on appellants to show prejudice from the action of the court in this regard. (*DeTray* v. *Higgins*, *supra*, 31 Cal.App.2d 482, 489; *Ebner* v. *West Hollywood T. Co.*, 45 Cal.App. 186, 191 [187 P. 114].)

 Appellants also argue that they did not receive the statutory notice of the proceedings held on the morning of June 8 before the superior court nor of the taking of the deposition on that afternoon. There was testimony by Margolis offered to establish that appellants' counsel had orally agreed to the hearing on the morning of June 8 and no testimony was offered to contradict this showing. The quotations from the deposition above set out indicate the familiarity of counsel for appellants with this proceeding and while he

stated that he had had only one or two days oral notice of the exact date of the hearing he not only made no objection to the taking of the deposition on this ground but he entered into a formal stipulation to the taking of the deposition and that it might be used by either party. This constituted a waiver of more formal notice. The only motion that he made was for a continuance, not on behalf of his clients, but of Albers. Albers had clearly consented before the court to the taking of his deposition at 2 p.m. on that day and Albers afterward signed the deposition without correction or amendment. The only possible objection that counsel for appellants voiced on behalf of his clients was that he had not received a copy of the questions certified by the notary to the court. Counsel has furnished us with no authority that this need be done and we find no such provision in section 1991 of the Code of Civil Procedure. In any event counsel's consent to the hearing without such service was established.

The witness proved a very reluctant one and counsel for respondents called his attention to the statements theretofore made by him, stating that they were made under oath and threatening him with prosecution for perjury if he repudiated them. Concerning the statement made to the police the witness finally testified: ''Well, if that is a sworn statement, then I did not know it was a sworn statement. For the record, I will have to say that it is true.''

''Q. On the same basis, the entire statement is true, isn't it? A. Yes.'' The statement to the police was copied into the deposition.

Counsel for appellants argue that in thus questioning the witness about the police statement respondents acted contrary to the instructions of the court and the taking of the deposition was for that reason manifestly unfair. The fact is, however, that the witness afterward signed the deposition as taken without any correction or comment. He is not complaining and the privilege if any was his, not appellants'. The deposition as returned was under the oath of the witness and properly admissible against the appellants.

While the witness was very reluctant to implicate these appellants enough appears in the direct questions and answers (without reference to the previous written statements) to support the findings of the court that appellants conspired with Albers to receive liquor belonging to respondents and did receive such liquor. While the written statements may be hearsay as to appellants, the error in the admission

of some hearsay evidence (in an action tried by the court without a jury) is not prejudicial error, where there is otherwise enough competent evidence in the record to support the findings. (*Bixby* v. *Bixby*, 120 Cal.App.2d 495, 499 [261 P.2d 286] and cases cited.)

The amount of damages found is based upon testimony that alcoholic beverages were handled under fair trade agreements under which the liquor was purchased at fixed wholesale prices and sold at fixed retail prices. By taking the inventory on hand at the beginning of 1953 and 1954, respectively, and adding thereto the purchases of liquor during each year and subtracting the inventory on hand at the end of each year respondents established the amount of such liquor withdrawn from their stock in each year. By comparing the actual receipts from sales of liquor in each year with the figure that should have been received from the retail sale of the amount of liquor withdrawn from stock in each year at the established mark-up price they established a loss aggregating the amount of the judgment.

Appellants complain that the figures for both stores were combined in these calculations, but the testimony shows that liquor was transferred from one store to the other freely and no other source of loss in either store was established. They also complain that an average mark-up was used in these calculations. ■ Appellants cannot complain, however, that the loss occasioned by their wrong-doing cannot be established with complete mathematical precision. (*Stott* v. *Johnston*, 36 Cal.2d 864, 876 [229 P.2d 348, 28 A.L.R.2d 580] ; *Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177].)

■ Appellants' complaint that the witness Margolis' testimony was based on a summarization of the records is met by the fact that the records were in court for use on cross-examination or otherwise as appellants might desire and Margolis testified to his familiarity with the records from which the summaries were made and their correctness. (Code Civ. Proc., § 1855, subd. (5); *Johnstone* v. *Morris*, 210 Cal. 580, 587-588 [292 P. 970] ; *Mayer* v. *Hazzard*, 10 Cal.App.2d 1, 4 [51 P.2d 189].)

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied October 15, 1958, and the petition of defendants and appellants for a hearing by the Supreme Court was denied November 12, 1958.